UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Securities Intermediary<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK,<br><br>Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Wells Fargo Bank, N.A., as Securities Intermediary (the "Securities Intermediary") hereby files this Complaint against The United States Life Insurance Company in the City of New York ("Defendant" or "U.S. Life") and alleges as follows:

## NATURE OF ACTION

1. The Securities Intermediary brings this action for breach of contract against U.S. Life based on U.S. Life's wrongful failure and refusal to pay the Securities Intermediary the $9,800,000 death benefit owed under a life insurance policy.

2. In 2005, U.S. Life issued a $9,800,000 (the "Death Benefit Amount") policy insuring the life of Catherine Cohen (the "Policy").

3. In 2011, the Securities Intermediary became the owner and beneficiary of the Policy, with U.S. Life's acknowledgement and approval, and began paying the substantial premiums charged by U.S. Life for the Policy.

4. During the 16 years that the Policy was in force until Ms. Cohen's death in October 2021, U.S. Life collected, accepted and retained more than $11 million in premiums for the Policy. Because the premiums it has collected for the Policy exceed the Death Benefit Amount and

because it has been able to earn interest income from those premiums for many years, the Policy has been extremely profitable for U.S. Life.

5.  After Ms. Cohen's death, the Securities Intermediary submitted a claim for the Death Benefit Amount owed to it from U.S. Life as the Policy's beneficiary. Notwithstanding the undisputed fact that U.S. Life had collected more than $11 million in premiums for the Policy, U.S. Life breached the Policy by refusing to pay the Death Benefit Amount owed to the Securities Intermediary.

6.  In order to justify its failure to pay, U.S. Life asserted that Ms. Cohen's birthdate listed in the 2005 insurance application was incorrect and that she was born in 1920 rather than in 1921 as stated in that application.

7.  Based on this minor supposed error, U.S. Life contends that (i) it is entitled to unilaterally and retroactively change the Policy's termination provision 16 years after its issuance and (ii) as a direct result, it is therefore relieved of its obligation to pay the Death Benefit Amount to the Securities Intermediary because, according to U.S. Life, the Policy would have expired on a date prior to Ms. Cohen's death.

8.  U.S. Life's purported legal justification for refusing to pay the Death Benefit Amount is not justified by the words of the Policy or the controlling principles of New York law and directly contradicts the legal position that U.S. Life recently took and prevailed on in a different case.

9.  Even assuming *arguendo* that U.S. Life could prove that there was an error regarding Ms. Cohen's birthdate in the insurance application, that would provide no basis for U.S.

Life to avoid paying the entire death benefit, because any challenge by U.S. Life based on Ms. Cohen's birthdate is time-barred.

10. Further, even if its challenge was not time-barred, U.S. Life's attempt to terminate the Policy as of an earlier date is contrary to the plain language of the Policy. The sole remedy provided in the Policy for misstatements of age is to adjust the Death Benefit Amount based on the insured's correct age at the time the policy was issued, not to eliminate all coverage as U.S. Life sought to do in denying coverage.

11. U.S. Life is well-aware that New York law only permits misstatement of age claims to be brought within the first six years after a policy is issued.

12. Indeed, U.S. Life recently successfully argued this position in *Jaroslawitz as Trustee of the Hy Trust v. United States Life Insurance Company in the City of New York*, No. 651492/2021, 2021 WL 9165822 (N.Y. Sup. Ct. May 10, 2021). Now, U.S. Life seeks to disavow the legal principles that it forcefully argued in the *Jaroslawitz* case to avoid payment on the Policy.

13. The Securities Intermediary brings this Complaint to hold U.S. Life responsible for its wrongful breach of the Policy and seeks full payment of the Death Benefit Amount with interest thereupon.

## THE PARTIES

14. Plaintiff Securities Intermediary is a national banking association with its main office in Sioux Falls, South Dakota. The Securities Intermediary is bringing this Complaint in its capacity as a securities intermediary, in which it acts in a representative capacity for its account holder, rather than an individual capacity.

15. Upon information and belief, defendant U.S. Life is a life insurance company domiciled in New York and with its principal place of business in New York.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of citizenship between the Securities Intermediary and U.S. Life and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

17. This Court has personal jurisdiction over U.S. Life because, among other reasons, it is domiciled in and has its principal place of business in New York, it is a licensed insurer in New York, and it issued the life insurance policy at issue in this action in New York pursuant to its New York insurance license.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

**FACTUAL BACKGROUND**

**U.S. Life issues a $9,800,000 policy on the life of Catherine Cohen in 2005**

19. In late 2005, U.S. Life issued a $9,800,000 life insurance policy insuring the life of Catherine Cohen (again, the "Policy"). A copy of the Policy is attached as Exhibit A to this Complaint.

20. The Policy provides that U.S. Life will pay the Death Benefit Amount to the Policy's "beneficiary" upon proof that Ms. Cohen died prior to the Policy's "maturity date." Specifically, the Policy's "Payment of Proceeds" provision states in relevant part: "The death benefit less debt will be paid to the beneficiary upon receipt of due proof of death of the insured prior to the maturity date."

21. The initial owner and beneficiary of the Policy was the Catherine Cohen Insurance Trust. However, the Policy explicitly provides in a provision titled "Change of Owner or Beneficiary" that the owner and beneficiary of the Policy may be changed by the current owner upon written notice to U.S. Life.

22. The Policy explicitly provides that its "maturity date" is November 8, 2021. It further specifies the limited circumstances under which coverage can be terminated prior to this specified maturity date of November 8, 2021, such as if premiums are not paid.

23. Thus, the Policy unambiguously promised that if Ms. Cohen died prior to November 8, 2021, and coverage had not terminated for a specifically enumerated reason, U.S. Life would pay the Death Benefit Amount to the then-beneficiary of the Policy upon receipt of proof of Ms. Cohen's death.

24. The Policy does not provide that the maturity date can be changed – thus causing the Policy to terminate prior to November 8, 2021 – if Ms. Cohen's date of birth as listed in the insurance application was incorrect.

25. Rather, the Policy contains a provision titled "Misstatement of Age or Sex" which sets forth the parties' exclusive remedy if it turned out that Ms. Cohen's birthdate had been incorrectly listed in the insurance application and a party brought a timely claim or defense based on such error.

26. The "Misstatement of Age or Sex" clause expressly provides: "If the insured's age or sex has been misstated, we will adjust the death benefit to reflect the amount at risk that would have been provided by the most recent monthly deduction made and the most recent cost of insurance rate for the insured's correct age and sex."

27. The Misstatement of Age Provision does not permit U.S. Life to change the maturity date of the Policy in the event Ms. Cohen's age was incorrect in the application.

28. Pursuant to this Misstatement of Age provision, if either U.S. Life or the Policy's owner/beneficiary learned that Ms. Cohen's age had been incorrectly recorded in the application, and raised a timely claim based on that error, their exclusive remedy was to have the Policy's death

benefit recalculated based on Ms. Cohen's correct age at the time of the Policy's issuance by either decreasing the death benefit if her age had been incorrectly understated or increasing the death benefit if her age had been incorrectly overstated.

29. The Misstatement of Age provision is required by Section 3203 of New York's Insurance Code, which requires all life insurance policies to have a provision "that if the age of the insured has been misstated, any amount payable or benefit accruing under the policy shall be such as the premium would have purchased at the correct age …. ".

**The Securities Intermediary has been the owner and beneficiary of the Policy since 2011 and U.S. Life has continued accepting premiums for the Policy for the remainder of Ms. Cohen's life**

30. In May 2011, the Securities Intermediary became the sole owner and beneficiary of the Policy. The Securities Intermediary holds the Policy—as well as many other life insurance policies—on behalf of third-party customers for which it maintains securities accounts.

31. The Uniform Commercial Code defines a securities intermediary, in pertinent part, as "a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity". U.C.C. 8-102(a)(14). Securities intermediaries frequently own life insurance policies for the benefit of third-party customers.

32. U.S. Life acknowledged and approved the Securities Intermediary's status as the new owner and beneficiary of the Policy, recorded those changes in its records, and began billing the Securities Intermediary for the substantial premiums due under the Policy.

33. From the time that it became the sole owner and beneficiary of the Policy in May 2011, until Ms. Cohen died ten years later in 2021, the Securities Intermediary, on behalf of its account holder, paid all premiums required to keep the Policy in force.

34. The Policy remained in force at the time of Ms. Cohen's death.

**After Ms. Cohen Died, U.S. Life Breached the Policy by Wrongfully Refusing to Pay the Death Benefit Amount to the Securities Intermediary**

35. Ms. Cohen died on October 21, 2021, more than 16 years after the Policy was issued. U.S. Life collected, accepted and retained more than $11 million in premiums paid during the entire 16-year period.

36. Even before taking into account interest, the premiums U.S. Life received for the Policy (and was able to earn interest income on) significantly exceeded the $9,800,000 death benefit that U.S. Life owed under the Policy.

37. The Securities Intermediary, through its representatives, provided U.S. Life with Ms. Cohen's death certificate and submitted the Securities Intermediary's claim for the Death Benefit Amount due under the Policy.

38. Because Ms. Cohen had died prior to the Policy's specified "maturity date" of November 8, 2021, pursuant to the Policy, U.S. Life was required to promptly pay the Securities Intermediary the Death Benefit Amount.

39. Rather than doing so, U.S. Life notified the Securities Intermediary that Ms. Cohen's death certificate stated that her date of birth was January 29, 1920, whereas Ms. Cohen's insurance application had recorded her date of birth as a little over a year later on May 10, 1921.

40. U.S. Life demanded that the Securities Intermediary provide evidence confirming that Ms. Cohen's birthdate was May 10, 1921, as listed in the application, rather than the earlier date listed in her death certificate.

41. Although it had no obligation to provide any information to U.S. Life as a precondition to payment of the death benefit, the Securities Intermediary provided U.S. Life with a copy of the only confirmation of Ms. Cohen's birthdate that the Securities Intermediary has in

its possession – her lawfully issued driver's license – which listed Ms. Cohen's date of birth as May 10, 1921.

42. May 10, 1921 is the same date that was listed in the insurance application.

43. Even though it is now in possession of Ms. Cohen's lawfully issued driver's license, U.S. Life has continued to refuse to pay the Securities Intermediary the Death Benefit Amount.

44. Instead, U.S. Life informed the Securities Intermediary that if it did not provide a copy of Ms. Cohen's birth certificate, passport or a letter from the Social Security Administration confirming Ms. Cohen's date of birth, U.S. Life would treat the birthdate listed in the application as incorrect and the birthdate from Ms. Cohen's death certificate as accurate.

45. U.S. Life further informed the Securities Intermediary that if it failed to provide the requested information U.S. Life would unilaterally and retroactively amend the Policy's "maturity date" to an earlier date such that the coverage under the Policy would be deemed to have terminated prior to Ms. Cohen's death and as a consequence, U.S. Life would have no obligation to pay the Death Benefit Amount to the Securities Intermediary.

46. Over the following several months, the Securities Intermediary explained to U.S. Life that the Policy does not permit the maturity date to be changed based on an alleged inaccuracy in the insured's date of birth in the insurance application.

47. The Securities Intermediary further explained that the sole remedy for a misstatement of age – if a challenge is timely brought – is to recalculate the death benefit based on what the insured's correct age was at the time the Policy was issued.

48. Although it is a licensed New York insurance company and therefore should be well aware of the limited remedy permitted for alleged misstatements of age under the terms of

the Policy and New York law, U.S. Life continued to refuse to pay the Securities Intermediary the Death Benefit Amount owed under the Policy.

49.    U.S. Life has no basis to refuse to pay the full Death Benefit Amount to the Securities Intermediary.

## COUNT I

## BREACH OF CONTRACT

50.    The Securities Intermediary incorporates by reference each and every allegation made in the preceding paragraphs of its Complaint as if set forth herein at length.

51.    The Policy constitutes a valid and enforceable written contract that requires U.S. Life to pay the Death Benefit Amount to the Securities Intermediary.

52.    The Securities Intermediary, as the sole owner and beneficiary of the Policy, is entitled to timely receive the Death Benefit Amount due under the Policy.

53.    The Securities Intermediary has complied with all applicable conditions of the Policy including paying all premiums due under the Policy.

54.    Ms. Cohen died on October 21, 2021, and on or around November 9, 2022, U.S. Life was provided with proof of Ms. Cohen's death thereafter.  U.S. Life was obligated under the Policy to promptly pay the Death Benefit Amount to the Securities Intermediary.

55.    U.S. Life has breached its obligations under the Policy by failing to pay the Securities Intermediary the Death Benefit Amount due under the Policy, plus interest, as the Policy requires.

56.    As a result of U.S. Life's breach of the Policy, the Securities Intermediary, on behalf of its customer that beneficially owns the Policy through the Securities Intermediary, has been damaged in an amount of $9,800,000, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, the Securities Intermediary prays that the Court enter judgment ordering as follows:

57. Awarding the Securities Intermediary damages for breach of contract in an amount not less than $9,800,000 plus interest;

58. Awarding the Securities Intermediary pre-judgment and post-judgment interest at the maximum rate permitted under the law;

59. Awarding the Securities Intermediary its costs of suit, expenses and reasonable attorneys' fees; and

60. Granting the Securities Intermediary such other, further and different relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 10, 2022

/s/ *John E. Failla*
John E. Failla
Nathan R. Lander
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
jfailla@proskauer.com
nlander@proskauer.com
212.969.3000
*Attorneys for Plaintiff*