August 30, 2024

The parties are directed to meet-and-confer about a briefing schedule for summary judgment and *Daubert* motions. The parties shall file a joint letter with a proposed briefing schedule or competing proposals by September 9, 2024.

SO ORDERED.
Date: August 30, 2024
New York, New York

**JOHN P. CRONAN**
United States District Judge

**Via ECF and E-mail**

The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

Re:    *Wells Fargo Bank, N.A., as Securities Intermediary v. The United States Life Insurance Company in the City of New York*, Case No. 1:22-cv-08606-JPC

Dear Judge Cronan,

Plaintiff Wells Fargo Bank, N.A., as Securities Intermediary (the "Securities Intermediary")[1] and Defendant The United States Life Insurance Company in the City of New York ("U.S. Life") jointly submit this letter pursuant to Paragraph 18 of this Court's Case Management Order ("CMO"), ECF No. 41. Consistent with the CMO's requirements, this letter addresses "whether the parties request a referral to the assigned Magistrate Judge for a settlement conference or to the Court-annexed mediation program, whether any party plans to file a post-discovery motion, the anticipated grounds for any such motion, and the opposing party's anticipated grounds for opposing the motion." CMO ¶ 18.

## I.    Mediation or Settlement Conference

In September 2023, the parties participated in a settlement conference before Magistrate Judge Robert W. Lehrburger. The parties have conferred and do not request a referral for a settlement conference or the Court-annexed mediation program at this time.

## II.   The Parties' Anticipated Motions for Summary Judgment

### A. The Securities Intermediary's Forthcoming Motion for Partial Summary Judgment and U.S. Life's Opposition.

#### *The Securities Intermediary's Motion.*[2]

The Securities Intermediary intends to file a motion for partial summary judgment against all misstatement of age defenses asserted by U.S. Life other than its defense based on unilateral mistake due to fraud. This motion for partial summary judgment will significantly narrow, streamline and clarify the issues remaining for the jury to resolve at trial.

---

[1] At all times, Securities Intermediary has acted, and continues to act, solely in a ministerial capacity as a securities intermediary for a third-party customer pursuant to the Uniform Commercial Code. *See* U.C.C. § 8-102(a)(14).

[2] Although the Securities Intermediary describes in this letter the principal grounds for its anticipated motion for summary judgment, it does not purport to identify all legal theories and bases for its anticipated motion. The Securities Intermediary reserves the right to include additional arguments and theories not set forth in this letter.

Honorable John P. Cronan
August 30, 2024
Page 2

This case is about U.S. Life's breach of a life insurance contract. The Securities Intermediary is the owner and beneficiary of a life insurance policy (the "Policy") insuring the life of Catherine Cohen. Am. Compl. ¶ 33. U.S. Life became contractually obligated to pay the Securities Intermediary the Policy's $9.8 million death benefit (the "Death Benefit") following the death of Ms. Cohen in October 2021. *Id.* ¶¶ 35, 37. Although the undisputed record evidence is that the Securities Intermediary paid all of the Policy's premium – which exceeded $11 million – and timely submitted a claim for the Death Benefit following Ms. Cohen's death, U.S. Life has continued to refuse to pay the claim. *Id.* ¶¶ 33-35, 37.

U.S. Life contends that it does not have the pay the Death Benefit because, it claims, Ms. Cohen misstated her age in the application for the Policy. U.S. Life asserts that this alleged misstatement of age permits it to avoid paying the Death Benefit by either (1) treating the Policy as having "matured" prior to Ms. Cohen's death or (2) adjusting the Policy's death benefit to $0 based on a "misstatement of age" provision in the Policy. U.S. Life attempts to justify these alternative theories of relief based on (1) supposedly applying the Policy's provisions; (2) reforming the Policy's provisions based on a mutual mistake; or (3) reforming the Policy's provisions based on a unilateral mistake.

The Securities Intermediary will demonstrate in its motion for partial summary judgment that U.S. Life's defenses based on the Policy and for reformation based on mutual mistake both fail as a matter of law based on the undisputed facts. Instead, as the Securities Intermediary will show, even if Ms. Cohen's age was misstated in the Policy application (which the Securities Intermediary disputes),[3] U.S. Life can only potentially obtain relief if it establishes a claim for reformation based on unilateral mistake due to fraud by Ms. Cohen. The grounds for the Securities Intermediary's motion include, among other things, the following points.

**First**, U.S. Life's defense that a misstatement of Ms. Cohen's age resulted in the Policy "maturing" prior to her death fails based on the plain language of the Policy. The Policy includes a specified maturity date of November 8, 2021. *See* Policy at UL-93 79-2.13, p.2. Notwithstanding this express and unambiguous maturity date, U.S. Life has alleged that, in view of its belief that Ms. Cohen misstated her age, the "Policy's true maturity date [is] November 8, 2019." *See, e.g.*, ECF No. 37 ¶ 4; *id.*, Affirmative Defenses ¶¶ 7-8. However, even if Ms. Cohen misstated her age, that does not affect the Policy's unambiguous maturity date. Instead, New York law requires a court to enforce the Policy's unambiguous November 8, 2021 maturity date. *See, e.g.*, *Swift Spindrift Ltd. v. Alvada Ins. Inc.*, 175 F. Supp. 3d 169, 176 (S.D.N.Y. 2016) ("When an insurance contract's provisions 'are unambiguous and understandable, courts are to enforce them as written.'").

**Second**, U.S. Life's defense that it can reform the Policy's maturity date based on a mutual mistake regarding Ms. Cohen's age is both time-barred and fails as a matter of law based on the

---

[3] U.S. Life bears the burden of establishing that Ms. Cohen misstated her age in the application, which it will be unable to do at trial. However, U.S. Life's non-fraud based defenses all fail as a matter of law based on the undisputed facts even if U.S. Life was able to establish a misstatement by Ms. Cohen. At trial, U.S. Life will thus need to establish both that Ms. Cohen misstated her age in the application and also that she engaged in fraud in doing so. The Securities Intermediary does not believe that U.S. Life will be able to do either, but recognizes these are fact issues for a jury to resolve.

Honorable John P. Cronan
August 30, 2024
Page 3

Policy's unambiguous language. "The statute of limitations on a claim of reformation based upon mistake is six years, accruing on the date of the mistake." *1414 APF, LLC v. Deer Stags, Inc.*, 39 A.D.3d 329, 330 (1st Dep't 2007). Because the Policy was issued in late 2005—at which point the statute of limitations for reformation claims based on a mutual mistake regarding Ms. Cohen's age in the insurance application began to run—the applicable statute of limitation for any attempt by U.S. Life to reform the Policy expired more than a decade ago in 2011. *See, e.g.*, *Jaroslawitz v. U.S. Life Ins. Co.*, No. 651492/2021, 2022 WL 2904413, at *2 (Sup. Ct. N.Y. Cty. July 20, 2022) (attempt to reform policy based on alleged misstatement of age barred by statute of limitations). Further, even if U.S. Life's attempt to reform the Policy's maturity date due to an alleged mutual mistake was not time-barred, such a reformation claim is precluded by the clear Policy language. "To plead reformation, a plaintiff must allege sufficient facts supporting a claim of mutual mistake, meaning that 'the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement.'" *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 51-52 (2022). Here, the Policy contains a "misstatement of age" provision that contemplates – and provides the exclusive remedy for – mistakes regarding the insured's age and does not permit U.S. Life to reform the Policy's maturity date based on a mistake regarding the insured's age.

**Third,** U.S. Life's defense based on the misstatement of age provision is a reformation claim that, unless based on unilateral mistake due to fraud, is likewise barred by the six-year statute of limitations for mutual mistake and due to the doctrine of judicial estoppel. U.S. Life is judicially estopped from contending that, absent a claim for reformation, a policyholder's misstatement of age on an insurance application can result in a reduction of the Policy's death benefit. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (citation omitted). This rule, known as judicial estoppel, exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 743. (citations omitted). U.S. Life argued in *Jaroslawitz* that misstatement of age claims are reformation claims subject to the six-year statute of limitations running from the date of the mistake, the court accepted and adopted U.S. Life's position, and it would be fundamentally unfair if U.S. Life were permitted to switch positions now that the statute of limitations it successfully invoked in *Jaroslawitz* forecloses its defenses here.

**Fourth**, U.S. Life's sole remaining defense—reformation based on unilateral mistake—can only be established if U.S. Life proves fraudulent conduct by Ms. Cohen. Therefore, the Securities Intermediary is entitled to judgment as a matter of law on this reformation claim to the extent it purports to be based on conduct by Ms. Cohen that U.S. Life alleges was merely "reckless" or "misleading", and no unconscionability defense is available here, *see* ECF No. 37, Affirmative Defenses ¶ 21(h).

Thus, the Securities Intermediary will establish in its motion that the only defense that should be submitted to the jury is U.S. Life's reformation defense based on unilateral mistake due to fraud by Ms. Cohen and that the Securities Intermediary should be granted summary judgment as to U.S. Life's other defenses based on the maturity date and misstatement of age provision.

Honorable John P. Cronan
August 30, 2024
Page 4

### U.S. Life's Opposition.

US Life will oppose Wells Fargo's motion for partial summary judgment on several grounds, including the following.

First, November 8, 2021 was not a fixed term negotiated and agreed to by the parties. Rather, the Policy was designed to mature at Ms. Cohen's attained age of 100, and November 8, 2021 was that attained age based on the incorrect date of birth of May 10, 1921. That the Policy was intended to mature at Ms. Cohen's age 100 is apparent from several Policy provisions and from the fact that the cost of insurance rates for the Policy only existed through age 100. Thus, changing the maturity date to November 8, 2019, does not alter any of the Policy's terms—it still would mature when Ms. Cohen reached an attained age of 100.

Second, insofar as any of US Life's defenses operate through reformation based on mutual mistake, they would be timely. New York's Appellate Division recognizes a discovery rule for reformation based on mutual mistake. *See, e.g.*, *Davis v. Davis*, 95 A.D.2d 674, 675 (1st Dep't 1983) (internal citations omitted) ("An action to reform an agreement based on mutual mistake must be commenced within six years of the occurrence . . . or two years from the discovery of the mistake[.]"); *Green Tree Servicing, LLC v. Molini*, 171 A.D.3d 880, 882 (2d Dep't 2019) (affirming trial court's finding that an action to reform a mortgage note was timely because it was brought within two years of the holder of the note discovering the issue, even though the mortgage instrument itself was drafted—and the mutual mistake was made—more than six years prior). Moreover, the fact that the Policy includes a misstatement of age provision—which is required by New York law—does not foreclose reformation to modify the maturity date because it does not state that it provides the exclusive remedy for misstatements of age.

Third, judicial estoppel does not bar any potential argument by US Life regarding the Policy's misstatement of age provision. This is true for several reasons, including that in the Second Circuit, judicial estoppel only applies to *factual* positions, not legal ones. *See, e.g.*, *U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 93 (S.D.N.Y. 1999) ("[W]hatever inconsistency there is between the positions . . . pertains to the construction of insurance policies. To the extent relevant here, however, such an issue is one of law, not fact."); *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 271-72 (2d Cir. 2019) ("The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding."); *2939, LLC v. Continental Indem. Co.*, 2023 WL 7173865, at *6 (E.D.N.Y. Sept. 21, 2023) ("[J]udicial estoppel applies only to inconsistent factual positions, not to legal conclusions advanced by a party.").

Fourth, Wells Fargo is wrong that US Life cannot sustain an affirmative defense for unilateral mistake based on recklessness or inequitable conduct.[4] Among other things, Wells Fargo ignores that New York courts have long recognized that "inequitable conduct," without true intent to deceive, is sufficient to establish a claim for reformation of an insurance contract based on unilateral mistake. Accordingly, "[f]or purposes of the reformation of an insurance contract, the term 'fraud' is used in a broad sense and extends beyond its usually accepted definition; it includes inequitable conduct on the part of either party, even if not exactly amounting to fraud." 68A N.Y.

---

[4] US Life does not understand Wells Fargo's reference to "unconscionability" in connection with this argument.

Honorable John P. Cronan
August 30, 2024
Page 5

Jur. 2d Insurance § 923; *see also DeLia v. Am. Mut. Liab. Ins. Co. of Bos*., 43 N.Y.S.2d 158, 163 (Sup. Ct. Onondaga Cnty. 1943) ("The words 'inequitable conduct' have been italicized for the reason that the word fraud in this instance has been liberalized or extended beyond its usual accepted definition.").

### B.  U.S. Life's Forthcoming Motion for Summary Judgment and the Securities Intermediary's Opposition.

#### *U.S. Life's Motion.*[5]

In late 2005, US Life issued a $9.8 million universal life insurance policy insuring the life of Catherine Cohen (the "Policy"), with an issue date of November 8, 2005.  Twice in her Policy application, Ms. Cohen represented that her date of birth was May 10, 1921.  She then signed her Policy application and attested that those representations were "true and complete to the best of [her] knowledge and belief."  *Id.* at 35.  Based on Ms. Cohen's purported date of birth of May 10, 1921, US Life issued the Policy with Ms. Cohen's "Age at Issue" as 84, and with a maturity date as November 8, 2021, when Ms. Cohen would reach an "attained age"[6] of 100 as calculated based on a May 10, 1921 date of birth.

Ms. Cohen died in October 2021, and in November 2021, Wells Fargo, which had since become the Policy's owner, submitted a death claim to US Life with a certified death certificate.  The death certificate recorded Ms. Cohen's date of birth as January 29, 1920—not the May 10, 1921 date used in her Policy application.

Discovery has now confirmed that May 10, 1921, was not Ms. Cohen's true date of birth.  It is undisputed that Ms. Cohen was taken in at an orphanage as a young child, and her older sister "assigned" to her the May 10, 1921 date of birth, which corresponded to Mother's Day.[7]  In fact, Ms. Cohen's true date of birth was—consistent with the date recorded in her death certificate— January 29, 1920.  That date of birth is reflected in medical and religious records maintained by the orphanage and successor religious entities, and it was the date of birth Ms. Cohen herself used (and substantiated with three pieces of evidence) when applying for a delayed birth certificate, which the Commonwealth of Pennsylvania issued to her in 1943.  And while Ms. Cohen embraced the May 10, 1921 date for much of her life,[8] she obtained Medicare and Social Security benefits in the 1980s using her true date of birth--January 29, 1920.

---

[5] Although US Life describes in this letter the principal grounds for its anticipated motion for summary judgment, it does not purport to identify all legal theories and bases for its anticipated motion.  US Life reserves the right to include additional arguments and theories not set forth in this letter.

[6] The Policy defines "Attained Age" as "age nearest birthday at the beginning of a policy year."  Because the Policy had an issue date of November 8, 2005, Ms. Cohen's nearest birthday was (based on her Policy application), May 10, 2005, resulting in an issue age of 84.  On November 8 of each subsequent year, Ms. Cohen's attained age would be based on her age at her immediate past birthday, rather than her upcoming birthday.

[7] The evidence also reflects that at least two of Ms. Cohen's siblings used "holiday" birthdays rather than their true dates of birth.

[8] Wells Fargo undoubtedly will point to examples of Ms. Cohen using the May 10, 1921 date of birth throughout her life, or two examples of her siblings recording that as her date of birth.  Those documents simply show that Ms. Cohen and her family used her adopted date of birth.  They do not establish that her true date of birth was May 10, 1921, or even that she *believed* her true date of birth was May 10, 1921.

Honorable John P. Cronan
August 30, 2024
Page 6

In light of Ms. Cohen's misstatement of age, US Life intends to move for summary judgment on two principal grounds. First, based on the January 29, 1920 date of birth, the Policy anniversary at which Ms. Cohen reached an attained age of 100 was November 8, 2019—the Policy's true maturity date—and payment was thus limited to the Policy's cash value as of that date (which has already been paid to Wells Fargo).[9] Second, the Policy contains a "misstatement of age" provision, which states that "[i]f the insured's age or sex has been misstated, we will adjust the death benefit to reflect the amount at risk that would have been provided by the most recent monthly deduction made and the most recent cost of insurance rate for the insured's correct age and sex." *Id.* at 16. For the life insurance product at issue, no cost of insurance rate existed for an attained age greater than 100, and so even without considering the maturity date, application of the Policy's misstatement of age provision results in no death benefit.

### <u>*The Securities Intermediary's Opposition.*</u>

U.S. Life's anticipated motion for summary judgment will fail because U.S. Life cannot meet its burden of establishing, as a matter of undisputed fact, that Ms. Cohen's date of birth was January 29, 1920 as it claims. Further, even if U.S. Life could establish that Ms. Cohen's date of birth was January 29, 1920, its defenses based on the Policy's maturity date and misstatement of age provision fail for several additional reasons.

First, U.S. Life's motion will fail because there is a clear factual dispute for the jury to resolve regarding Ms. Cohen's date of birth. All of U.S. Life's defenses require it to prove, as a threshold matter, that Ms. Cohen was born on January 29, 1920 (as U.S. Life claims) rather than on May 10, 1921 (the date of birth listed on the application) or some other date in 1921 or 1922. U.S. Life bears the burden of proof on this issue. "The burden of proof of establishing [a misstatement of age] affirmative defense in avoidance of the [policyholder's] claim [is] upon the [insurer]." *Goell v. U.S. Life Ins. Co. in City of N.Y.*, 265 A.D. 735, 737 (1st Dep't 1943). Indeed, "[t]he cases are clear that the [policyholder] has the advantage of a presumption that the age stated in the policy is the true age." *Id.* at 736. "This presumption stands until rebutted by evidence which may fairly satisfy the jury that the insured was in fact of some other age which would preclude plaintiff's right to any recovery." *Id.* When the insurer rebuts the presumption and the policyholder then introduces evidence supporting the birthdate used in the Policy application, "the question of the age of the insured [is] one of fact and properly submitted to the jury." *Corbett v. Metropolitan Life Ins. Co.*, 37 A.D. 152, 155 (4th Dep't 1899).

U.S. Life is not going to be able to meet its burden of proving to the jury that January 29, 1920 was Ms. Cohen's date of birth, and it certainly will not be able to meet its burden of establishing that Ms. Cohen's date of birth was January 29, 1920 as a matter of undisputed fact on summary judgment. The evidence relied upon by U.S. Life in claiming that Ms. Cohen was born on January 29, 1920 is unreliable, and U.S. Life ignores the substantial evidence confirming that Ms. Cohen was born in May 1921 (as stated in her insurance application) rather than on January 29, 1920.

---

[9] The Policy specifies that "if the insured is living on the maturity date," then only "[t]he cash value less debt will be paid to the owner." Wells Fargo has argued that the maturity date was fixed at November 8, 2021, and could not be adjusted to an earlier date without invoking the equitable doctrine of reformation. US Life disagrees, and it intends to establish that the Policy matured on November 8, 2019, whether based on legal or equitable theories.

Honorable John P. Cronan
August 30, 2024
Page 7

To begin with, U.S. Life has no reliable evidence that Ms. Cohen was born on January 29, 1920. There is no contemporaneous record of Ms. Cohen's birth, such as a birth certificate or infant baptism record. Instead, U.S. Life relies on records from an orphanage that Ms. Cohen and some of her siblings lived at after her mother died, which on some occasions listed Ms. Cohen's date of birth as January 29, 1920.[10] However, those records are entirely unreliable for several reasons. First, the records give no indication of the origin and source for the January 29, 1920 date. Second, the records on other occasions list Ms. Cohen as having been born in 1922, not 1920. Third, it has been confirmed that the orphanage's records of the dates of births for Ms. Cohen's brother was wrong – by a full two years – rendering it implausible that they would have somehow accurately known Ms. Cohen's date of birth. Fourth, the orphanage itself acknowledged to the State of Pennsylvania that it did not know when Ms. Cohen was born and that her date of birth could have been anytime between 1920 and 1922. Simply put, U.S. Life has no reliable evidence, much less undisputed evidence, of Ms. Cohen having been born on January 29, 1920.

Further, there is substantial evidence confirming that Ms. Cohen was born in May 1921, rather than on January 29, 1920. After Ms. Cohen's parents died, the people with the best knowledge regarding Ms. Cohen's date of birth were her older siblings. Two of those siblings signed sworn affidavits—decades before this insurance dispute—testifying that Ms. Cohen was born on May 10, 1921. Her older brother signed such an affidavit in 1943 and her older sister signed such an affidavit in 1970 in support of Ms. Cohen's passport application.[11] That is the best evidence regarding Ms. Cohen's date of birth. Further, consistent with the sworn testimony of her siblings, Ms. Cohen repeatedly represented to the government that she was born in May 1921, specifically through (among others) her: (1) application for a social security number (1940); (2) marriage application and license (1944); (3) passport application (1970 and 2007); (4) voter's registration (1984); (5) New York Driver's License; and (6) Florida identification card.[12] This evidence substantiating that Ms. Cohen was not born on January 29, 1920 is far more substantial than the evidence necessary to establish a factual dispute as to Ms. Cohen's date of birth. *Corbett*, 37 A.D. at 155 (where conflicting evidence regarding insured's date of birth exists, a jury question remains).

U.S. Life's assertion that the record evidence indisputably establishes that Ms. Cohen was born on January 29, 1920 is also, notably, directly contrary to its own internal guidelines regarding what types of evidence are sufficient to establish an insured's date of birth (and what types of evidence are insufficient). Where, as here, the claim exceeds $1 million, U.S. Life will only accept a contemporaneous birth certificate or a passport as proof of an insured's date of birth. And, even for smaller claims, the claims manual explicitly states that delayed birth certificates created more than 10 years after a person's birth are not acceptable as reliable proof of an insured's date of birth.

---

[10] The other evidence relied upon by U.S. Life – such as the 1943 "delayed birth certificate" and 1980s social security records – were based upon the unreliable orphanage records.

[11] U.S. Life claims that May 10, 1921 was "assigned" as a birthday to Ms. Cohen by her older sister to correspond with Mother's Day. However, even if it is true that her sister did not know her exact date of birth, there is no evidence (or basis to believe) that her sister simply made up the year and month of birth.

[12] U.S. Life claims that there were two instances of Ms. Cohen using January 29, 1920 as her date of birth in government records – applying for a delayed birth certificate and with respect to social security and Medicaid benefits. Neither of these records is proof that Ms. Cohen was born on January 29, 1920 and there are substantial factual disputes related to both situations.

Honorable John P. Cronan
August 30, 2024
Page 8

Here, acting directly contrary to its own guidelines, U.S. Life is refusing to accept Ms. Cohen's passport records (which listed her date of birth as May 10, 1921) as confirmation of her date of birth. Instead, U.S. Life relies on a delayed birth certificate created more than 10 years after Ms. Cohen's birth (and other documents not acceptable under its own guidelines) in contending that Ms. Cohen was indisputably born on January 29, 1920. This is all the more reason that a reasonable jury could conclude that U.S. Life has not met its burden of establishing that Ms. Cohen was born on January 29, 1920. Because U.S. Life's summary judgment motion is contingent upon establishing that Ms. Cohen misstated her age in the application and that she was instead born on January 29, 1920, and because there is a genuine dispute of fact on that issue, U.S. Life's anticipated summary judgment motion will fail for that threshold reason.

Second, even if U.S. Life could establish that Ms. Cohen was born on January 29, 1920, its summary judgment motion would still fail for several additional reasons, including but not limited to those addressed above when discussing the Securities Intermediary's anticipated motion for partial summary judgment. *See* Section II.A.

As to U.S. Life's claim that, if Ms. Cohen was born on January 29, 1920, the Policy "matured" prior to Ms. Cohen's death: (1) the Policy has a fixed maturity date of November 8, 2021 that must be enforced pursuant to the Policy's unambiguous language; (2) any attempt to reform the maturity date due to a mutual mistake regarding Ms. Cohen's age is both barred by the statute of limitations and fails as a substantive matter; and (3) any attempt to reform the maturity date due to a unilateral mistake regarding Ms. Cohen's age would require U.S. Life to prove fraud by Ms. Cohen, which it cannot do. *See* Section II.A.

As to U.S. Life's claim that, if Ms. Cohen was born on January 29, 1920, U.S. Life can adjust the Policy's death benefit to $0 pursuant to the Policy's misstatement of age provision, U.S. Life is barred by the statute of limitations and doctrine of judicial estoppel from applying the misstatement of age provision unless it proves fraud by Ms. Cohen (which it cannot do). *See* Section II.A. Further, even if it were permitted to apply the Policy's misstatement of age provision, U.S. Life is wrong that the adjusted death benefit would be $0. Instead, as the Securities Intermediary will show in its opposition, a reasonable jury could conclude that properly applying the misstatement of age provision would only result in a modest reduction of the death benefit owed by U.S. Life.

## III.   <u>Anticipated *Daubert* Motions</u>

### A.  The Securities Intermediary's *Daubert* Motions and U.S. Life's Opposition.

#### <u>*The Securities Intermediary's Daubert Motions.*</u>

The Securities Intermediary also intends to file motions to exclude U.S. Life's expert witnesses. Under Federal Rule of Evidence 702,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

Honorable John P. Cronan
August 30, 2024
Page 9

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Thus, "a district court's Rule 702 inquiry involves the assessment of (1) the qualifications of the expert to testify as to a particular matter, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of the expert's testimony (*i.e.*, whether the expert's testimony as to a particular matter will 'assist the trier of fact')." *Bocoum v. Daimler Trucks North Am. LLC*, No. 17CIV7636JPCBCM, 2022 WL 902465, at \*6 (S.D.N.Y. Mar. 28, 2022).

Moreover, "expert witnesses are generally not permitted to address issues of fact that a jury is capable of understanding without the aid of expert testimony." *Pension Comm. of Univ. of Montreal Pension Plans v. Banc of Am. Sec., LLC*, 716 F. Supp. 2d 220, 223 (S.D.N.Y. 2010). And "it is also well-established that expert witnesses are not permitted to testify about issues of law— which are properly the domain of the trial judge and jury." *Id.* at 224.

First, U.S. Life's purported expert witness Suhas Sarathy – an employee of U.S. Life's parent company – submitted a conclusory summary report that does not comply with Federal Rule of Civil Procedure 26(a)(2)(B). That rule requires experts to submit a report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i-ii). Sarathy's just over three-page report does not comply with this rule. His report offers conclusory summaries of opinions he may express, *see* Sarathy Rep. at 2-4, without sufficiently explaining the bases for his results and how the results are supported by Sarathy's specialized knowledge. For example, he opines that "[a]ssuming Catherine Cohen was born on January 29, 1920, the proper application of the Policy's misstatement of age provision results in an adjusted death benefit of $0 because the Medalist Premier product did not provide cost of insurance rates beyond attained age 100." But this opinion is merely a regurgitation of the legal argument that U.S. Life has championed in connection with its claim. *See U.S. Life v. Wells Fargo*, Case No. 22-cv-5621, ECF No. 1 ¶¶ 52-53 (S.D.N.Y. July 1, 2022) ("For the life insurance product in question, no cost of insurance rate existed for Cohen's correct age, as the cost of insurance rates did not exist for an attained age beyond 100. Applying the Policy's age adjustment provision, the death benefit payable under the Policy is $0 . . . ."). The opinion, like various other summary and conclusory opinions Sarathy gives, does not provide the basis for the opinion and the specialized knowledge Sarathy is applying to reach the conclusion. This requires exclusion of Sarathy's report and anticipated testimony. *See, e.g., Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, No. 93CIV.6876LMMRLE, 2000 WL 1762533, at \*1 (Nov. 30, 2000) (concluding one page report stating conclusion but not providing the "rationale that led to the conclusion" failed to comply with Rule 26(a)(2)(B)).

There is good reason for Sarathy's failure to submit an expert report that complies with Rule 26(a)(2)(B). He is not qualified to offer his purported expert opinions and failed to apply a reliable methodology, which are both separate bases for the exclusion of Sarathy's testimony. *See* Fed. R. Evid. 702. Sarathy purports to testify regarding "the correct way to apply the misstatement of age provision" in the Policy despite the fact that he has never before applied a misstatement of age provision and has no experience whatsoever with respect to misstatement of age provisions. *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV5936KMW, 2011 WL 1674796, at *5 (S.D.N.Y. May 2, 2011) (proffered expert "not qualified to offer an expert opinion about statistics or surveying issues" even though purported expert "no doubt employed statistics to some degree in his studies and work" because that generalized knowledge did not demonstrate the expert was qualified to opine on the statistical analyses at issue in the case). Unsurprisingly given his lack of experience, his purported opinions amount to nothing more than pure *ipse dixit* and improper legal conclusions—the same legal conclusions that U.S. Life has been championing in this case. For example, as discussed above, Sarathy concludes that application of the misstatement of age provision here results in a $0 death benefit. But offering this opinion, without explaining how specialized knowledge informs the opinion, amounts to nothing more than Sarathy's interpretation of the Policy's Misstatement of Age provision, which is not proper expert testimony. *See, e.g.*, *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, No. 1:23-CV-04942 (AT), 2024 WL 3638329, at *9 (S.D.N.Y. Aug. 2, 2024) ("The 'interpretation of an insurance agreement is a question of law,' as to which expert testimony is not permitted." (citations omitted)).

Second, U.S. Life's expert, Roger D. Joslyn, is a genealogist who—is his own words—concludes, "to a reasonable degree of certainty, that Catherine Cohen was born on January 29, 1920." Joslyn Rep. ¶ 18. Joslyn makes this conclusion based upon his review of documents, *id.*, and his review of Ms. Cohen's family history, *see generally* Joslyn Rep. This is not permissible expert testimony. Joslyn's opinions are not the byproduct of applying any specialized knowledge that will assist the trier of fact. His analysis likewise is not traceable to any reliable methodology. Instead, U.S. Life impermissibly proffers Joslyn to become a vehicle for factual narrative. *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) ("It is also inappropriate for experts to become a vehicle for factual narrative."). Indeed, a review of Joslyn's report underscores his conclusion, which he holds to a "reasonable degree of certainty," that Ms. Cohen was born on January 29, 1920 is based on nothing more than Joslyn's review of documents related to Ms. Cohen and her family history. *See generally* Joslyn Rep. "Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology." *Tourre*, 950 F. Supp. 2d at 675. Separately, the factual narration approach employed by Joslyn "invade[s] the province of the jury, providing a separate basis for exclusion." *Id.* Stated differently, expert testimony is inappropriate where, as here, the expert instructs the jury to reach a certain conclusion based on the expert's opinion of the evidence. The jury will review the same evidence Joslyn relies on in support of his conclusion that Ms. Cohen was born on January 29, 1920 and should independently make its own determination based on the evidence. It is not Joslyn's job to instruct the jury what to conclude based on his opinion of the evidence. *See, e.g.*, *Price v. Fox Ent. Grp.*, 499 F. Supp. 2d 382, 387 (S.D.N.Y. 2007) ("Expert testimony is inadmissible when it addresses 'lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help.'" (citation omitted)).

Honorable John P. Cronan
August 30, 2024
Page 11

For this reason, Joslyn's opinions and anticipated testimony are entirely subject to exclusion. The forthcoming motion to exclude Joslyn, however, will also include other bases to exclude portions of his report and anticipated testimony. For example, certain records here are not discernable because it looks as if writing had been scratched out or replaced. While admitting he is no handwriting expert and has no specialized knowledge in analyzing handwriting, Joslyn impermissibly offers his opinion regarding what the handwriting means. *See, e.g.*, Joslyn Rep. ¶ 40 (opining that certain handwriting "was corrected"). As another example, Joslyn impermissibly attempts to offer his interpretation of various laws, which amounts to impermissible expert testimony in the form of legal conclusions. *See, e.g.*, Joslyn Rep. ¶¶ 47-50 (opining on what the law required for a delayed birth certificate to be issued); *SEC v. Lek Sec. Corp.*, No. 17CV1789 (DLC), 2019 WL 1304452, at *4 (S.D.N.Y. Mar. 21, 2019) (excluding expert testimony "regarding what the law requires").

Finally, U.S. Life has also submitted a rebuttal expert – Barbara Mueller – in response to the expert report submitted by the Security Intermediary's expert Laura Dambier. Unlike Dambier, however, Mueller does not employ a reliable methodology based on her experience and does not offer any testimony that would be useful to the jury. Her purported rebuttal testimony should therefore also be excluded. Portions of Mueller's anticipated testimony are also subject to exclusion for various other reasons. For example, she opines that "[t]here is not one life insurance industry claim handling standard that all insurers must follow, nor is there is one prescribed way to evaluate life insurance claims." Mueller Rep. at 7. Yet Mueller does not support this conclusory opinion with any "facts or data," as required by Federal Rule of Civil Procedure 26(a)(2)(B). Indeed, rather than offering relevant opinions regarding custom and practice in the insurance industry, Mueller's report merely attacks the existence of whether custom and practice exists in the life insurance industry. That is a *Daubert* challenge, not a proper rebuttal report.

### *U.S. Life's Opposition.*

First, Wells Fargo claims that Suhas Sarathy should be excluded because his report failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B). Wells Fargo is mistaken. Rule 26(a)(2)(B) applies only where an expert is "retained or specially employed to provide expert testimony in the case" of if their "duties as the party's employee regularly involve giving expert testimony." *Id.* Mr. Sarathy, an employee, was neither retained for the purpose of this litigation nor does he regularly provide expert testimony as part of his employment. Thus, US Life served Wells Fargo with a disclosure as required by Rule 26(a)(2)(C), which requires only: (1) a statement of "the subject matter on which the witness is expected to present evidence" and (2) "a summary of the facts and opinions to which the witness is expected to testify." *Id.* US Life made clear in Mr. Sarathy's disclosure that it was being made pursuant to Rule 26(a)(2)(C), and US Life reiterated that during his deposition. Of course, during the deposition, Wells Fargo was permitted to (and did) explore in great detail the basis for Mr. Sarathy's opinion.[13]

---

[13] Moreover, Wells Fargo's belated complaint about the adequacy of Mr. Sarathy's disclosure does not relate to the admissibility of his testimony and is not a *Daubert* motion that attacks whether his opinions comply with Rule 702. The proper method to challenge the adequacy of "a disclosure required by Rule 26(a)," such as an expert disclosure, is a discovery motion made pursuant to Rule 37(a). Fed. R. Civ. P. 37(a)(3)(A). Such a motion requires the moving party to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

Honorable John P. Cronan
August 30, 2024
Page 12

Wells Fargo's arguments concerning Mr. Sarathy's qualification to offer an opinion about the misstatement of age calculation and the reliability of his methods are equally flawed. Mr. Sarathy is a senior actuary with more than twenty years of actuarial experience in the insurance industry. While Wells Fargo makes much of Mr. Sarathy's testimony that he does not perform misstatement of age calculations for US Life, it ignores that a misstatement of age calculation is not complex for a trained actuary to perform, and a senior actuary with Mr. Sarathy's qualifications is more than qualified to perform it. Where an "expert has educational and experiential qualifications in a general field closely related to the subject matter in question, [a] court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Rubenstein v. Knight-Swift Transp. Holdings, Inc.*, 664 F. Supp. 3d 523, 548 (S.D.N.Y. 2023) (rejecting challenge to expert's qualifications). That is all the more true here, where there is no specialized area of actuarial work that is unique to misstatement of age adjustments. Additionally, Mr. Sarathy applied a reliable methodology and drew upon his expertise to explain why performing the misstatement of age calculation results in a zero-dollar death benefit. It is not a conclusion that would be evident to a layperson, or even an experienced attorney, by simply reading the insurance policy at issue, as Wells Fargo contends.

Second, Wells Fargo contends that the opinions of US Life's expert genealogist, Roger Joslyn, should be excluded because they are based "on nothing more than Joslyn's review of documents related to Ms. Cohen and her family history" and "are not the byproduct of applying any specialized knowledge that will assist the trier of fact." In fact, Mr. Joslyn draws on more than forty years of experience as a Certified Genealogist (one of only ~200 in the country) to analyze, interpret, and synthesize an array of historical, context-specific documents, including orphanage records, baptismal and other religious records, records of vital statistics, census records, and government records. Moreover, as Mr. Joslyn explained in his report and at his deposition, in performing his analysis he has applied the Genealogy Standards promulgated by the Board for Certification of Genealogists.

As for Wells Fargo's contention that Mr. Joslyn's testimony would usurp the role of the jury, the Second Circuit has recognized in the analogous context of expert historians that an expert's "'specialized knowledge' could potentially aid a trier of fact," such as to "help to identify, gauge the reliability of, and interpret evidence that would otherwise elude, mislead, or remain opaque to a layperson." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013). Therefore, even if an expert takes an "expository approach" to explaining his opinions, his testimony is "admissible where it 'synthesizes' or 'summarizes' data in a manner that 'streamline[s] the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion.'" *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 133–34 (S.D.N.Y. 2022) (alteration in original). Mr. Joslyn provides the requisite context to help the jury gauge the reliability of the extensive historical evidence, which is far outside the experience of the average juror.

---

Had Wells Fargo attempted to bring that discovery motion, it would have failed because Wells Fargo would not have been able to make a required showing of prejudice after deposing Mr. Sarathy at length regarding his opinions. *See Brennan-Centralla v. Ritz-Craft Corp. of Pa.*, 788 F. App'x 799, 803 (2d Cir. 2019) (affirming admissibility of expert's opinion not previously disclosed because of lack of prejudice).

Honorable John P. Cronan
August 30, 2024
Page 13

Wells Fargo's other bases for excluding portions of Joslyn's report are equally baseless. For example, Joslyn's review of handwritten documents does not require that he be qualified as a handwriting expert. Similarly, his opinions regarding the historical requirements to obtain a delayed birth certificate in Pennsylvania are designed to provide historical context regarding the process by which Catherine Cohen would have obtained her delayed birth certificate. Mr. Joslyn's opinions on this topic "will not usurp the Court's role in explaining the law to the jury" because Wells Fargo's claims are "not governed by" the 1940 Pennsylvania laws related to delayed birth certificates. *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016).

Third, Wells Fargo asserts in conclusory fashion that unlike its own claims handling expert, Laura Dambier, US Life's rebuttal claims handling expert, Barbara Mueller, "does not employ a reliable methodology based on her experience and does not offer any testimony that would be useful to the jury." Wells Fargo does not identify Ms. Dambier's supposed methodology (there is none) or explain why it believes Ms. Mueller's opinions based on her extensive experience are deficient. Indeed, Ms. Mueller has been a claims handling expert in more than 300 cases and has more than fifty years of experience in the insurance industry. Based on that experience, she offers several opinions concerning claims handling and related issues, which directly respond to and rebut the opinions of Ms. Dambier and Wells Fargo's other purported expert, Stanley Shelley. This is entirely appropriate for non-scientific expert testimony. Although a "court cannot permit experts to 'offer credentials rather than analysis,'" where an expert "ties [her] experience to observations of what she considers typical in the industry" her analysis "suffices to show that [her] 'testimony is the product of reliable principles and methods' and that she 'has applied the principles and methods reliably to the facts of the case.'" *Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338, at *10 (S.D.N.Y. July 29, 2024) (rejecting challenge to expert's methodology). That is exactly the type of analysis Ms. Mueller provided throughout her report and deposition.

### B.  U.S. Life's *Daubert* Motions and the Securities Intermediary's Opposition.

#### *U.S. Life's Motion.*

Wells Fargo has relied on three experts. US Life intends to move to exclude all three on several grounds, including the following.

Wells Fargo's expert witnesses fail to satisfy the collective requirements of Rules 702, 401, and 403. Its first witness, Laura Dambier, purports to be an expert on customs and practices in the life insurance industry. Her report focuses on whether US Life's internal claims handling guidelines required it to disregard all evidence that Ms. Cohen's date of birth was January 29, 1920 and not May 10, 1921 because of a passport application obtained by Wells Fargo in discovery eighteen months after the lawsuit was commenced. But even if that is what US Life's internal guidelines required (they decidedly did not), this is a breach-of-contract action, and US Life's claims handling guidelines—which indisputably are not part of the contract at issue—are not relevant to whether US Life has breached. Dambier similarly and improperly opines about the claims handling procedures of two other non-party insurers that issued policies insuring the life of Catherine Cohen, which are irrelevant to Wells Fargo's breach of contract claim.

Wells Fargo's second witness, Stanley Shelley, parrots Dambier's improper claims handling opinion, then offers two other opinions that are equally improper. Shelley purports to

Honorable John P. Cronan
August 30, 2024
Page 14

offer an opinion regarding the correct application of the policy's misstatement of age provision, but Shelley is not qualified to offer this opinion because he is not an actuary, and he conceded during his deposition that his calculation is wrong and based on incorrect assumptions and inputs. Shelley also impermissibly opines that US Life cannot adjust the Policy's maturity date, but that opinion is based solely on his non-expert reading of the policy and his review of the text of New York's statutory misstatement of age provision.

Moreover, given their limited experience in the insurance industry, neither Shelley nor Dambier are qualified to testify about any of the opinions they offer. Both witnesses also purport to offer opinions as to the ultimate legal issue in the case, namely that US Life should have paid Wells Fargo the full death benefit. In addition, the vast majority of these experts' testimony would simply describe factual information already available in the record, which is an improper use of expert testimony.

Finally, US Life also intends to exclude the opinions of Wells Fargo's genealogy expert, Kathleen Hinckley, who concluded that Catherine Cohen's date of birth cannot be determined with any reasonable degree of certainty. Although Hinckley purports to use methods of research and analysis commonly accepted in the field of genealogy, her deposition revealed that she used these methods selectively to support Wells Fargo's preferred conclusion and to explain away contrary evidence.

### *The Securities Intermediary's Opposition.*

U.S. Life's *Daubert* motions all lack merit and should be denied. First, U.S. Life contends that Laura Dambier's opinions and anticipated testimony should be excluded under Federal Rules of Evidence 401, 403, and 702. For the most part, however, U.S. Life's asserted challenges to Dambier focus on relevance, and not on whether Dambier's opinions are based on application of reliable methodology. U.S. Life first claims that Dambier's analysis regarding U.S. Life's claim guidelines is irrelevant to whether U.S. Life has breached the insurance contract at issue. But that opinion is plainly relevant. Dambier explains based on her extensive industry experience that it is standard practice in the life insurance industry to have manuals that define the documentation necessary to process claims, including what documentations is sufficient to confirm an insured's date of birth when there is a dispute on that issue. *See, e.g.*, Dambier Rep. at 6. And where, as here, life insurance companies have such guidelines, they should follow them when processing claims. U.S. Life is in possession of documentation that its own guidelines conclude is sufficient to establish a policyholder's date of birth, yet to this day it has continued to deny the Securities Intermediary's claim, and relied on evidence that its own guidelines expressly deem to be insufficient of an insured's date of birth. Dambier's expert opinion regarding custom and practice in the life insurance industry with respect to claims-handling and specifically regarding resolving discrepancies regarding an insured's date of birth is the precise type of custom and practice evidence that is regularly admitted in insurance disputes as permissible expert testimony and is of significant value to the jury. *See, e.g.*, *Am. Nat'l Fire Ins. Co. v. Mirasco, Inc.*, 265 F. Supp. 2d 240, 252 (S.D.N.Y. 2003) ("[E]xperts may testify as to the customary practices in a profession or industry.").

U.S. Life also claims that Dambier's opinions should be excluded because she relies on record evidence of other life insurance companies' determination to pay claims on life insurance

Honorable John P. Cronan
August 30, 2024
Page 15

policies insuring Ms. Cohen's life.  U.S. Life claims such opinions are irrelevant. However, this evidence corroborates Dambier's opinions regarding customs and practices in the life insurance industry and how those customs and practices were uniformly applied by the other life insurance companies that issued policies on Ms. Cohen's life.

Second, U.S. Life seeks exclusion of the opinions of Stan Shelley, the Securities Intermediary's second expert.  U.S. Life first challenges Shelley's qualification because he is not an actuary. But, as described more fully below, Shelley has substantial experience in the life insurance industry.  His experience includes overseeing claim departments at life insurance companies, which involved claims involving the calculation resulting from applying a life insurance policy's misstatement of age provision.  *See* Shelley Rep. at 13.  U.S. Life also claims Shelley's opinions are subject to exclusion because of purported errors with his calculation and because it was based on incorrect assumptions and inputs.  Even if true, this attack is one that should be made upon cross examination—it is not a basis to exclude expert testimony.  *See, e.g.*, *Phoenix Light SF Ltd. V. Bank of N.Y. Mellon*, No. 14-CV-10104 (VEC), 2020 WL 1322856, at *13 (S.D.N.Y. Mar. 20, 2020) ("[P]robing weaknesses in the [expert's] model's assumptions in favor of alternative inputs is appropriate grist for cross-examination and for BNYM's experts' rebuttal testimony, not for exclusion.").

U.S. Life also claims Dambier and Shelley are not qualified to offer their opinions.  But both are eminently qualified.  Dambier is "a former insurance industry executive with 20 years of experience within the life insurance industry."  Dambier Rep. at 1.  Among other employment in the industry, Dambier held a senior executive role at Lincoln Financial Group, a top-tier insurance company that offered life insurance services, among others.  *Id.*  Dambier was directly involved in claims handling activities through her employment and also implemented and enforced new "industry standards for dealing with older, incomplete, or missing data as it related to processing claims."  *Id.*  Shelley likewise has substantial experience in the life insurance industry.  Shelley held numerous jobs in the life insurance industry, including Executive Vice President (Distribution) for Lincoln Benefit Life, which is a life insurance company.  *See* Shelley Rep. at 2.  Through his employment, Shelley was exposed to all aspect of the life insurance industry.  *Id.*  The claims department at his companies reported to him.  And, throughout his career, he reviewed thousand of claims files as part of audits.  *Id.*  Simply stated, Dambier's and Shelley's lengthy experience in the life insurance industry qualifies them to offer expert testimony regarding custom and practice in the industry.  *See, e.g.*, *Am. Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 435, 448 (S.D.N.Y. 2006) ("The documents Merck has submitted in support of its expert indicate that Jervis has over twenty-five years of experience in the transit insurance business across the globe and has handled and adjusted over 12,500 transit claims during his career. The Court is persuaded that he has sufficient 'specialized knowledge' to properly testify about transit insurance industry practices and customs.").

U.S. Life's anticipated challenge to the Securities Intermediary's final expert (Kathleen Hinckley) fares no better.  U.S. Life contends that Hinkley used methods selectively to support the Securities Intermediary's preferred conclusion and to explain away contrary evidence.  However, what Hinckley does is provide classic rebuttal testimony.  Hinckley, a certified genealogist, was retained to rebut the opinions of Roger Joslyn (U.S. Life's genealogist).  As discussed in Section III.A, based upon his document review, Joslyn concludes to a "reasonable degree of certainty" that Catherine Cohen was born on January 29, 1920.  Hinkley reviewed the same evidence as Joslyn

Honorable John P. Cronan
August 30, 2024
Page 16

and, applying genealogical standards that she explains in detail, reaches an opposite conclusion as Joslyn does. She permissibly rebuts his opinion by concluding that, based upon this record, no genealogist that actually applied acceptable standards in the field of genealogy could conclude when Ms. Cohen was born to any reasonable degree of certainty. In the event Joslyn is permitted to testify, Hinckley should plainly be permitted to offer her rebuttal testimony.

## IV.    Other Post-Discovery Motions

The parties respectfully request, consistent with what they understand to be this Court's standard procedure, that deadlines for motions in limine be set in advance of any trial in this matter.

## V.    Briefing of Summary Judgment and *Daubert* Motions

In the event that the Court permits the filing of the summary judgment motions and/or *Daubert* motions discussed above, the parties respectfully request that they be given an opportunity to meet-and-confer about a proposed briefing schedule and to submit a proposed schedule (or competing proposals) within one week of the Court's order granting leave to file the motions.


Respectfully submitted,

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000

By: /s/ *John E. Failla*
    John E. Failla
    Nathan R. Lander
    Jared M. DuBosar
    jfailla@proskauer.com
    nlander@proskauer.com
    jdubosar@proskauer.com
*Attorneys for Plaintiff Wells Fargo Bank,*
*N.A., as Securities Intermediary*

FISHKIN LUCKS LLP
The Woolworth Building
233 Broadway, Suite 820
New York, NY 10279
Telephone: (646) 755.9200

By: /s/ *Aaron Loterstein*
    Steven M. Lucks
    S. Aaron Loterstein
    slucks@fishkinlucks.com
    aloterstein@fishkinlucks.com
*Attorneys for Defendant*
*The United States Life Insurance*
*Company in the City of New York*