UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                            :

WELLS FARGO BANK, N.A.,                :

                            :

                 Plaintiff,      :

                            :

          -v-             :         22 Civ. 8606 (JPC)

                            :

THE UNITED STATES LIFE INSURANCE    :         ORDER
COMPANY IN THE CITY OF NEW YORK,    :

                            :

                 Defendant.    :

                            :
----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

In a case that largely turns on a person's date of birth, an eleventh-hour discovery of a purported "Delayed Birth Certificate" is potentially critical. *See* Dkt. 143 ("Motion"), Exh. A (displaying a scanned document with the title "Delayed Birth Certificate"). Defendant The United States Life Insurance Company in the City of New York ("US Life") recently uncovered such a record and informed Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") that it intends to introduce it as evidence at trial, which is scheduled to begin in just over two months on June 16, 2026. Wells Fargo moves for leave to reopen expert discovery so that it may serve an expert report concerning that record, as well as to allow US Life to serve a rebuttal expert report. *See* Motion. US Life opposes the motion. Dkt. 144 ("Opposition"). For the reasons explained below, the Court grants Wells Fargo's motion and sets a schedule for limited expert disclosures and motions, if any, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## I. Background[1]

The Court assumes familiarity with the facts and recounts them only as relevant. Wells Fargo is the owner and beneficiary of a life insurance policy that US Life had issued to a woman named Catherine Cohen. *See Wells Fargo Bank*, 2025 WL 2220948, at *1. After Ms. Cohen died, "Wells Fargo attempted to collect on the policy," but "US Life refused, claiming that, at the time the policy was issued, Catherine had falsely represented her birthday as May 10, 1921, when in fact she was born on January 29, 1920." *Id.* Discovery closed on August 16, 2024, *see* Dkt. 73. On August 4, 2025, the Court concluded that there was a genuine dispute as to Ms. Cohen's true date of birth and denied the parties' respective cross-motions for summary judgment. *Wells Fargo Bank*, 2025 WL 2220948, at *4-20. The Court also resolved the parties' motions to preclude expert testimony pursuant to *Daubert*. *Id.* at *20-33. At the upcoming trial, the jury will be asked to determine, *inter alia*, Ms. Cohen's true date of birth.

Wells Fargo now moves to reopen expert discovery to allow it to serve an expert report concerning the newly uncovered record, to allow US Life to serve a rebuttal expert report, and to permit the parties to conduct an additional round of *Daubert* briefing if appropriate. This request arises from US Life's disclosure that it recently obtained the record entitled Delayed Birth Certificate and intends to admit it at trial.[2] *See* Motion at 1-2. Neither party knew of this document's existence until well after discovery was completed. *See id.* at 2; Opposition at 1. Wells Fargo describes the record as "an application for a delayed birth record that appears to have been filed with the Commonwealth of Pennsylvania Department of Health Bureau of Vital

---

[1] Unless otherwise indicated, capitalized terms are defined in *Wells Fargo Bank, N.A. v. United States Life Insurance Company in the City of New York*, No. 22 Civ. 8606 (JPC), 2025 WL 2220948 (S.D.N.Y. Aug. 4, 2025).

[2] US Life does not specify when exactly it learned of the Delayed Birth Certificate's existence. *See generally* Opposition.

Statistics in February of 1943," Motion at 1-2, while US Life states that it is "the original of the delayed birth certificate applied for by Catherine Cohen and issued by the Pennsylvania Department of Vital Records," Opposition at 1.  Though US Life had subpoenaed the Department of Vital Records in October 2023, it explains that the agency did not produce that record in response.  *Id.*  Rather, US Life represents that it obtained the record only recently from the Pennsylvania State Archive after it was made available "[d]ue to a Pennsylvania public access law that permits public access to birth records 105 full years after an individual's birth."  *Id.*[3]

Wells Fargo argues that because it learned of this record's existence only after discovery was completed, it should "be provided an opportunity" to file "an expert report from a forensic expert" to analyze "the overwriting of information, different inks, and other issues that undermine U.S. Life's reliance on the document as purported proof that Ms. Cohen provided a January 29, 1920 date of birth to the Pennsylvania Department in the application."  Motion at 2-3; *see also id.* at 2 ("For example, examining even just a copy of the document (and not the original), it appears clear that the date of birth initially written on this application was May 1921 (the date Ms. Cohen consistently used throughout her life) and that someone wrote over that with January 29, 1920 in different ink.").

## II.  Discussion

"A district court has broad discretion in deciding whether good cause exists to amend the scheduling order and reopen discovery."  *Dominguez v. Thompson*, No. 24 Civ. 7119 (GHW), 2025 WL 2855263, at *12 (S.D.N.Y. Oct. 7, 2025) (citation modified); *see* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  "The burden of demonstrating good cause rests with the movant."  *Ritchie Risk-Linked Strategies Trading (Ir.),*

---

[3] The Court, of course, does not take a position on whether 105 years have indeed passed since Ms. Cohen's birth.

*Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009)).  Rule 16 does not define "good cause," but the Second Circuit has stated that "the diligence of the moving party" is at the center of the analysis.  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see Dominguez*, 2025 WL 2855263, at *12; *see also Ritchie Risk-Linked Strategies Trading (Ir.)*, 282 F.R.D. at 79 ("A party seeking to reopen expert discovery must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence.").  Thus, "[t]o satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met."  *Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) (citation modified).

Though not "mandatory," six factors have aided courts in this District when considering a motion to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Id.* (citation modified); *see, e.g.*, *Fed. Ins. Co. v. Mertz*, No. 12 Civ. 1597 (NSR), 2015 WL 5769945, at *6-7 (S.D.N.Y. Sept. 29, 2015); *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).  Here, trial is just two months away and the motion is opposed.  Thus, the first two factors weigh in favor of denying Wells Fargo's motion.

The fourth, fifth, and sixth factors weigh heavily in favor of granting the motion, however. Wells Fargo has acted diligently since learning that US Life seeks to introduce the record into evidence only some weeks ago.  *See* Motion at 3 (explaining that Wells Fargo is filing its motion "within weeks of receiving U.S. Life's exhibit list (and a copy of their exhibits), which comprised U.S. Life's first disclosure of the document and its intent to rely on it at trial").  Indeed, US Life

does not assert that Wells Fargo failed to act diligently. *See* Opposition at 1 (explaining that the record was not produced in response to its October 2023 subpoena to the Pennsylvania Department of Vital Records, and that the record "only became publicly available now," at which point "both sides were able to access and obtain it from the Pennsylvania State Archive"). Wells Fargo obviously could not have anticipated the need for expert testimony about a document it did not know exists. And the expert testimony Wells Fargo anticipates—including a forensic analysis of the "overwriting of information, [and] different inks," Motion at 2-3—would be highly relevant to the accuracy of the information printed on the document at issue, especially in light of what Wells Fargo describes as "self-evident alterations" on the document's face. *Id.* at 2. It is hard to overstate the potential significance at a trial of this kind of a document entitled "Delayed Birth Certificate," including whether alterations were made to it. Though US Life contends that these purported alterations could be "fully explored through cross-examination and argument at trial," and observed and understood by the jury "without the aid of expert testimony," Opposition at 1-2, the type of forensic analysis Wells Fargo seeks to introduce is the province of expert witnesses. *See Frangipani v. HBO*, No. 08 Civ. 5675 (GBD), 2010 WL 1253609, at *1 n.4 (S.D.N.Y. Mar. 16, 2010) (explaining that "[a] forensic document examiner is a trained professional who draws conclusions about documents including, among other things, whether a document is authentic, whether a document has been altered and any other problem that arises concerning the legitimacy of writing on documents").

The third factor, prejudice to the non-moving party, does not weigh sufficiently in US Life's favor to justify denying Wells Fargo's motion. Though the renewed expert discovery would be limited, it would nonetheless prejudice US Life by requiring it to examine Wells Fargo's expert's report, investigate the expert's qualifications, consider retaining an expert of its own, and possibly prepare a *Daubert* motion as well as respond to one. *See Bakalar*, 851 F. Supp. 2d at 494.

The Court also will allow the parties the opportunity to conduct depositions of their adversary's expert, if they so choose. Moreover, the parties must do so on a condensed timeline given the proximity to trial. But it is difficult to conclude that this unduly prejudices US Life when this situation arises from *US Life*'s desire to introduce into evidence a document that it had not produced in discovery (to be sure, through no fault of its own). Wells Fargo would, of course, need to operate on the same condensed timeline.

### III.  Conclusion

For the foregoing reasons, the Court grants Wells Fargo's motion for leave to submit a limited expert report addressing the document in question. Wells Fargo shall submit its opening expert report by April 24, 2026. US Life's rebuttal expert report is due on May 8, 2026. Any depositions of the experts shall take place by May 13, 2026. Motions to preclude the opposing party's expert pursuant to *Daubert*, if any, are due May 19, 2026. Oppositions to *Daubert* motions are due May 26, 2026, and reply briefs are due May 29, 2026.[4] The parties shall be prepared to discuss these motions at the final pre-trial conference on June 3, 2026.

The Clerk of Court is respectfully directed to close Docket Number 143.

SO ORDERED.

Dated: April 14, 2026
       New York, New York

                                             JOHN P. CRONAN
                                             United States District Judge

---

[4] The Court slightly adjusts the briefing schedule proposed by Wells Fargo to allow for depositions of its expert and US Life's rebuttal expert.